IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**DERRICK LAMONT ALLEN**                                                   **PLAINTIFF**

v.                                  No: 4:18-cv-00284 JM-PSH

**RYAN CRANCER,** *et al.*                                                **DEFENDANTS**

## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommendation has been sent to United States District Judge James M. Moody Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I. Introduction

Plaintiff Derrick Lamont Allen filed a complaint pursuant to 42 U.S.C. § 1983 on April 30, 2018, while he was detained at the Pulaski County Regional Detention Facility ("PCRDF"). Doc. No. 2. Allen claims he was attacked with "OC" spray by Deputies Ryan Crancer and Sherri Brown in the Pulaski County jail on Monday, April 9, 2018, resulting in an injury to his left hand. Doc. No. 7 at 1. Allen specifically alleged:

> On Monday, April 9, 2018, I was sprayed with a can of "OC" spray by Deputy Crancer. I was placed in a cell alone, when he came back there & attacked me. He called a "code blue," alarming other officers who also came. I was sprayed over & over. I was kicked, punched, choked, slammed, & cuffed. I never violated any

> Pulaski County Jail Rule. I suffered an injury to my left hand. I was put in a restraint chair for hours & sprayed while in cuffs. I was sprayed so much that I was unable to breath. A bag was the placed on my head to make the mace burn even more & suffocate me while in the chair. Deputy A. Brown sprayed me directly on my penis & then put a garment that she sprayed, across my lap (sexual assault).

*Id.* Allen also raised several unrelated claims which were subsequently dismissed. *See* Doc. Nos. 12 & 18. Allen sues Crancer and Brown in both their official and individual capacities. Doc. No. 2 at 2.

Defendants filed a motion for summary judgment, a brief in support, and a statement of facts asserting that they are entitled to judgment as a matter of law on the merits of Allen's claim (Doc. Nos. 71-73). Although Allen was notified of his opportunity to file a response, he did not do so.[1] *See* Doc. No. 74. Because Allen failed to controvert the facts set forth in the defendants' statement of facts, Doc. No. 72, those facts are deemed admitted. *See* Local Rule 56.1(c). The defendants' statement of facts, and the other pleadings and exhibits in the record, establish that the material facts are not in dispute, and defendants are entitled to judgment as a matter of law.

## II. Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate

---

[1] Several weeks after his response was due, Allen filed copies of the defendants' answers to his interrogatories. *See* Doc. No. 79. The bulk of those interrogatories appear to relate to the confiscation of certain property, which is not an issue in this lawsuit. Allen also attaches an alleged copy of defendant Brown's timesheet showing that she worked on the day in question. *Id.* at 5. Other responses to Allen's interrogatories indicate that Brown was not working at the time of the incident or in the area where the incident occurred. *Id.* at 3 & 9.

the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). An assertion that a fact cannot be disputed or is genuinely disputed must be supported by materials in the record such as "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . .". Fed. R. Civ. P. 56(c)(1)(A). A party may also show that a fact is disputed or undisputed by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(B). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Undisputed Facts

The following facts are taken from those submitted by the defendants that are supported by documents attached to their statement of facts (Doc. No. 72), including the Affidavit of Lesa Warner[2] (the "Warner Affidavit") and numerous exhibits (Doc. No. 72-1).

Allen was booked into the Pulaski County Regional Detention Facility ("PCRDF"), on April 9, 2018. Doc. No. 72-1 at 1 (Warner Affidavit, ¶ 1) and 4 (April 9, 2018 Book In Sheet).[3]

---

[2] Warner is the Administrative Sergeant at the PCRDF.

[3] On August 13, 2018, Allen pleaded guilty to possession of a controlled substance. *Id.* at 2-3 (Warner Affidavit ¶ 13), 37 (60CR-18-1865 Plea Statement).

Pulaski County policy provides that the PCRDF shall be operated in a constitutional manner in compliance with the Minimal Jail Standards of Arkansas and shall provide a safe living environment for inmates. *Id.* at 2 (Warner Affidavit, ¶ 8) and 8-12 (Pulaski County Sheriff's Office Branch Directive D01-0001). The PCRDF's use of force policy requires deputies to use the minimum amount of non-deadly force necessary to maintain the security and control of inmates and to prevent incidents from escalating into an emergency. *Id.* at 2 (Warner Affidavit, ¶ 9) and 13-23 (Pulaski County Sheriff's Office Branch Directive D01-0001).

Soon after Allen was booked into the PCRDF on April 9, 2018, Allen began beating on the glass of his cell and removing his clothes. *Id.* at 2 (Warner Affidavit ¶ 10) and 24 (Deputy Ryan Crancer's April 9, 2018 PCRDF Incident Report (the "Crancer Report")). Crancer and Sergeant Prentis Grayson approached the cell and told Allen to put on his clothes but Allen refused. *Id.* Crancer opened the cell door to speak with Allen, at which point Allen took an aggressive stance, balled his fist, and lunged at Crancer. *Id.* at 2 (Warner ¶¶ 10, 11, and 12), 24 (Crancer Report), and 25 (Sergeant Prentis Grayson's April 9, 2018 PCRDF Incident Report ("Grayson Report")); *see also* video footage of the April 9, 2018 incident ("April 9, 2018 video") (CD on file in the clerk's office).

Crancer applied a 1-2 second burst of oleoresin capsicum ("OC") spray to Allen's facial area. *Id.* at 2 (Warner Affidavit ¶ 10) and 24 (Crancer Report); *see also* April 9, 2018 video. Allen remained standing, so Crancer applied a second short burst of OC spray to Allen's facial area. *Id.* at 2 (Warner Affidavit ¶ 11), 24 (Crancer Report), and 25 (Grayson Report); *see also* April 9, 2018 video. Allen went to the floor, and Crancer handcuffed his wrists. *Id.* at 2 (Warner Affidavit ¶ 10) and 24 (Crancer Report); *see also* April 9, 2018 video. Grayson called a code blue (deputy needs assistance). *Id.* at 2 (Warner Affidavit ¶ 10) and 24 (Crancer Report).

Sergeant Orlando Newburn and Deputy Mikyel Caffey arrived at the scene, assisted Allen to his feet and to a chair. *Id.* at 2 (Warner Affidavit ¶ 10) and 24 (Crancer Report); *see also* April 9, 2018 video. Allen refused medical treatment, but he was visibly assessed and cleared to remain in the facility. *Id.* at 2 (Warner Affidavit ¶ 13) and 26 (Sergeant Orlando Newburn's April 9, 2018 PCRDF Incident Report ("Newburn Report")). Allen yelled and spit throughout the incident, and Sergeant Denise Atwood placed a spit mask on his head. *Id.* at 2 (Warner Affidavit ¶ 11), 25 (Grayson Report), and 27 (Sergeant Denise Atwood's April 9, 2018 PCRDF Incident Report ("Atwood Report")); *see also* April 9, 2018 video.

Crancer and Caffey walked Allen to the shower, where he was showered, sprayed with a delousing agent, and given a suicide smock. *Id.* at 2 (Warner Affidavit ¶¶ 10 and 11), 24 (Crancer Report), and 25 (Grayson Report). Crancer secured Allen in a restraint chair, where he was assessed a second time by medical personnel. *Id.* at 2 (Warner Affidavit ¶¶ 10 and 14), 24 (Crancer Report), and 27 (Atwood Report). Medical personnel cleared Allen to remain in the restraint chair. *Id.* Roughly one hour later, Atwood removed Allen from the restraint chair. *Id.* at 2 (Warner Affidavit ¶ 14) and 27 (Atwood Report). Medical personnel assessed Allen a third time, and cleared him to remain in the unit. *Id.* Allen was then secured in his cell. *Id.*

PCRDF Chief of Detention, Mike Sylvester, reviewed all documents and video regarding the April 9, 2018 incident and found no apparent violations. *Id.* at 2 (Warner Affidavit ¶ 15) and 28 (April 9, 2018 PCRDF Official Memorandum).

A Turn Key Health Mental Health Professional Note indicates that Allen told medical personnel the following day that he "does not remember much" about his behavior the previous day. *Id.* at 2 (Warner Affidavit ¶ 16) and 29 (April 10, 2019 Turn Key Health Mental Health Professional Note). During his intake screening on April 11, 2019, medical personnel noted that

5

Allen had swelling in his wrists and left pinky finger. *Id.* at 3 (Warner Affidavit ¶ 17) and 30 (April 11, 2018 Turn Key Health Intake Screening form). On May 17, 2018, Allen complained that he had a "dislocated finger" from being handcuffed. *Id.* at 3 (Warner Affidavit ¶ 18) and 31 (May 17, 2018 Turn Key Health Nursing Protocol). Medical personnel noted that Allen had swelling in his left pinky finger, but noted no sign of a fracture. *Id.* Allen was given ice to apply to his finger and acetaminophen for pain. *Id.*

An x-ray of Allen's finger taken in June 2018 (which was previously placed into the record by Allen) revealed soft tissue swelling, but no fracture. Doc. No. 32 at 2-4. An outside doctor assessed the injury as a sprain. *Id.*

### IV. Analysis

#### A. Official Capacity Claims

Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veach v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Thus, a suit against a defendant in his official capacity is in essence a suit against the County or city itself. *See Murray v. Lene*, 595 F.3d 868 (8th Cir. 2010); *Liebe v. Norton*, 157 F.3d 574 (8th Cir. 1998). A municipality cannot be held liable on the basis of *respondeat superior*, or simply by virtue of being the employer of a tortfeasor. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). Accordingly, the defendant county employee can only be held liable in his official capacity in this case if Allen can establish that a constitutional violation was committed pursuant to "an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009). Allen describes an isolated incident and does not assert that a custom or policy of Pulaski County was the moving force behind the claimed violations of his constitutional rights. Accordingly, defendants are entitled to summary judgment on Allen's official capacity claims.

### B.     Qualified Immunity

Defendants argue they are entitled to qualified immunity with respect to Allen's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Due process requires that a pre-trial detainee may not be punished prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). To support a claim for relief, a plaintiff must allege and prove that the force purposely or knowingly used against him was objectively unreasonable, and objective reasonableness turns on the "facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015). "Constitutionally infirm practices are those that are punitive in intent, those that are not rationally related to a legitimate purpose, or those that are rationally related but are excessive in light of their purpose." *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1048 (8th Cir. 1989).

The incident reports and video footage in the record show that Allen was sprayed in an effort to restore order in the jail and to stop Allen's aggressive behavior. The video of the incident contradicts Allen's version of what happened. Allen was not attacked in his cell as he alleged. Rather, he came out of his cell partially undressed, waived his arm at Crancer in a way that appeared to be an attempt to strike Crancer, and then continued to yell and waive his arms while exiting the cell. Crancer quickly sprayed Allen near his face, and Allen began to beat on the cell window from the outside. Crancer then sprayed Allen again, and when he lay down on the floor, Crancer handcuffed him. At no point did the officers involved in subduing Allen appear to use more force than was reasonable to gain control of Allen. Allen was not sprayed repeatedly, kicked, punched, choked, or slammed as he alleged. The video also contradicts Allen's claim that he was sprayed after being placed in a chair as well as his claim that his penis was sprayed. On a couple of occasions, officers pulled Allen's clothes up to cover him, but he was not sprayed while in the chair. The video shows Officer Atwood placing a spit mask over Allen's head as he continued to yell and stomp his feet. She explained this was done because he was spitting. Allen was then held in the chair while he continued to yell and stomp his feet until he was taken away to shower.

Further, although Allen claims his finger was dislocated as a result of the incident and that he had breathing problems from the spray, his medical records show that he did not remember the incident very well the day after, and only complained of swollen wrists and a sore pinky on his left hand two days after the incident. Allen initially refused medical treatment and did not require treatment in the infirmary or transport to a hospital for treatment. Allen also complained about his finger in May 2018, approximately six weeks after the incident in question, and was eventually diagnosed with a sprained finger in June 2018. These facts establish that the amount of force used

did not cause significant injury, and that the force used was not excessive given Allen's aggressive behavior.

Viewing the evidence in the light most favorable to Allen, the Court finds that there is no genuine issue as to any material fact, and defendants should be awarded judgment as a matter of law. As described earlier, the core judicial inquiry is whether the use of force was objectively reasonable under the circumstances. There is no evidence that Brown was present during the incident, and the undisputed evidence shows that Crancer was attempting to maintain discipline and order in the jail as Allen came out of his cell in a threatening and unruly manner. For these reasons, the undersigned finds that defendants should be awarded summary judgment on Allen's excessive force claim.

## V.  Conclusion

The defendants' motion for summary judgment should be granted. Allen's official capacity claims against defendants should be dismissed without prejudice for failure to state an actionable claim. Allen's individual capacity excessive force claims should be dismissed with prejudice because defendants are entitled to qualified immunity.

IT IS SO RECOMMENDED this 30th day of October, 2019.

_____
UNITED STATES MAGISTRATE JUDGE